JUDGE FORREST

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

JAMES CLAVIJO,                                    13 CIV 6148

                        :   INDEX NO.
                        :   **ECF CASE**

             Plaintiff,    :
                        :
      - against -        :   **JURY TRIAL DEMANDED**
                        :
THE CITY OF NEW YORK, a municipal entity,   :
NEW YORK CITY POLICE OFFICER        :   **COMPLAINT**
MICHAEL WILLIAMS, NEW YORK CITY     :
POLICE OFFICERS "JOHN DOES 1-10,"       :
POLICE SERGEANTS "JOHN DOES 1-2,"       :
                        :
                        :
            Defendants.    :
                        :

----------------------------------------------------------------X

RECEIVED
AUG 30 2013
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff James Clavijo, by his attorneys, Stecklow Cohen & Thompson, complaining

of the defendants, respectfully alleges as follows:

## I.    PRELIMINARY STATEMENT

      1.     On or about April 28, 2012, Plaintiff James Clavijo was inside Big Nick's

Pizza & Burger Joint ("The Restaurant") located at 70 W. 71st Street New York, NY 10023.

Plaintiff stepped outside of The Restaurant and was assaulted by three individuals and lost

consciousness as a result. Shortly after Plaintiff regained consciousness, the Defendant

POLICE OFFICERS arrived to the scene and handcuffed him.

      2.     Plaintiff informed the Defendant POLICE OFFICERS that he was the victim

of an assault, and that he had left personal property, including a valuable leather jacket and

cell phone, inside of The Restaurant. The Defendant POLICE OFFICERS did not help

Plaintiff secure his property, but instead threatened to process him overnight for property destruction if he did not pay $250.00 to The Restaurant for damage that he did not cause.

3.      The Defendant POLICE OFFICERS, without Plaintiff's consent, seized Plaintiff James Clavijo's credit card and allowed The Restaurant to charge $250.00 on the card.  The Defendant POLICE OFFICERS transported Plaintiff to the 20th Precinct ("the Precinct") and charged him with an offense that he did not commit.

4.      Plaintiff returned to The Restaurant at or around 10:00am to recover his belongings. Employees of the Restaurant told Plaintiff that they did not have his belongings. Plaintiff went to the Precinct to file a lost property report. The Defendant POLICE OFFICERS told Plaintiff that they did not have his belongings.

5.      Plaintiff asked for information as to how to file a complaint against The Defendant POLICE OFFICERS and the Precinct. The Defendant POLICE OFFICERS refused to give Plaintiff information as to how to file a complaint and began shoving him out of the Precinct. Plaintiff voiced his frustrations with how the Defendant POLICE OFFICERS were treating him.

6.      As Plaintiff was exiting the Precinct at least three of the Defendant POLICE OFFICERS tackled, assaulted, handcuffed, arrested, and detained Plaintiff. Plaintiff was charged with violating two counts of P.L. §240.20, disorderly conduct, offenses that he did not commit. Plaintiff, on approximately five occasions, was forced to appear before the Court to answer the Defendant POLICE OFFICERS' baseless charges against him. All charges from Plaintiff's unlawful arrest outside of the Restaurant were dismissed on July 11, 2012. All charges from Plaintiff's unlawful arrest at the Precinct were dismissed on September 12, 2012.

7.     In sum, Plaintiff brings this claim because Defendant POLICE OFFICERS, sworn to protect and serve him, instead harassed, brutalized, arrested him, and falsely charged him with offenses, despite the fact that he at no point engaged in any criminal or illegal conduct of any kind or type.

## II.   JURISDICTION

8.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (4) and the aforementioned statutory and constitutional provisions.

10.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III.   VENUE

11.     Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV.   JURY DEMAND

12.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed.  R.  Civ.  P.  38(b).

## V.     THE PARTIES

13.     At all times relevant to this action, Plaintiff was an American citizen and a resident of the City of New York, County of New York and State of New York.

14.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

15.     Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("the NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE CITY OF NEW YORK.

16.     At all times, Defendant POLICE OFFICER MICHAEL WILLIAMS was a duly sworn police officer of the NYPD and was acting under the supervision of the NYPD and according to his official duties. Plaintiff asserts his claim against Defendant POLICE OFFICER MICHAEL WILLIAMS in both his official and individual capacities.

17.     Defendant "John Does 1-5" were those officers who were outside of the Restaurant and cited Plaintiff at or around 3:00am on April 28, 2012.

18.     Defendant "John Does 6-10", along with Defendant POLICE OFFICER MICHAEL WILLIAMS, were the officers who interacted with Plaintiff when he returned to the Precinct to recover his belongings.

4

19.     The Defendant POLICE SERGEANTS "John Does 1-2" were those police sergeants who interacted with Plaintiff when Plaintiff returned to the Precinct to recover his belongings.

20.     At all times relevant, Defendant POLICE OFFICER MICHAEL WILLIAMS, the Defendant POLICE OFFICERS "John Does 1-10", and the Defendant POLICE SERGEANTS "John Does 1-2" (collectively, "the Defendant POLICE OFFICERS"), were duly sworn police officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.  Plaintiff asserts his claims against each officer in both their official and individual capacities.

21.     Plaintiff will amend this complaint to name the Defendant POLICE OFFICERS "John Does 1-10" and the Defendant POLICE SERGEANTS "John Does 1-2" as further information regarding their identities becomes available to Plaintiff.

22.     At all times relevant to this action, each of the Defendant POLICE OFFICERS, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

23.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

**VI.     FACTS COMMON TO ALL CLAIMS**

24.     On or about April 28, 2012, at or around 3:00am, Plaintiff was inside Big Nick's Burger & Pizza Joint ("The Restaurant"), located at 70 W. 71st Street, New York, NY 10023.

25.     Plaintiff had a Hugo Boss jacket.

26.     Plaintiff had an iPhone 4 in his possession.

27.     Plaintiff stepped outside of the restaurant and stood in front of it.

28.     Three individuals assaulted Plaintiff, battering him until he lost consciousness.

29.     The Defendant POLICE OFFICERS "John Does 1-5" arrived at the scene.

30.     At or around this time, Plaintiff regained consciousness.

31.      The Defendant POLICE OFFICERS "John Does 1-5" arrested one of the individuals who had assaulted Plaintiff.

32.     The Defendant POLICE OFFICERS "John Does 1-5" handcuffed Plaintiff.

33.     Plaintiff informed the Defendant POLICE OFFICERS "John Does 1-5" that he had left his jacket and phone inside of The Restaurant.

34.      Plaintiff asked the Defendant POLICE OFFICERS "John Does 1-5" to safeguard his Jacket and iPhone.

35.     The Defendant POLICE OFFICERS "John Does 1-5" did not undertake any steps to safeguard Plaintiff's Jacket and iPhone.

36.     Plaintiff requested that the Defendant POLICE OFFICERS "John Does 1-5" allow him to retrieve his jacket and iPhone from inside The Restaurant.

37.     The Defendant POLICE OFFICERS "John Does 1-5" did not allow Plaintiff to do so.

38.     Instead, the Defendant POLICE OFFICERS "John Does 1-5" threatened to arrest and detain Plaintiff overnight if he did not pay $250.00 for property that had allegedly been damaged within The Restaurant.

39.     Plaintiff had not caused any property damage within The Restaurant.

6

40.     Nonetheless, the Defendant POLICE OFFICERS "John Does 1-5", without Plaintiff's consent, seized Plaintiff's credit card and allowed The Restaurant to charge $250.00 on the card.

41.     Plaintiff again asked that the Defendant POLICE OFFICERS "John Does 1-5" help him reclaim his jacket and phone.

42.     The Defendant POLICE OFFICERS "John Does 1-5" refused to do so.

43.     Plaintiff was transported to the 20th Precinct.

44.     There Plaintiff was held for approximately two (2) hours.

45.     Plaintiff was issued a summons for violating P.L. §240.20(1), Disorderly Conduct, "Summons #433478434-3."

46.     The allegations in the summons were false; Plaintiff had committed no violation or crime.

47.     The Defendant POLICE OFFICERS "John Does 1-5" did not issue a property voucher to Plaintiff, so as to allow him to reclaim his Jacket, iPhone, and other belongings.

48.     Plaintiff was released from the Precinct at or around 6:00am.

49.     Plaintiff returned to the Restaurant in hopes of reclaiming his phone and jacket at or around 10:00am the same day.

50.     One or more employees of The Restaurant told Plaintiff that they did not have his iPhone and Jacket.

51.     Plaintiff returned to the Precinct at or around 11:00am in order to file a report for his lost property.

52.     At or around this time, Plaintiff came into contact with Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE OFFICERS "John Does 6-10", and the Defendant POLICE SERGEANTS "John Does 1-2".

53.     One more of the Defendant POLICE OFFICERS "John Does 6-10" and/or Defendant POLICE OFFICER WILLIAMS, and/or the Defendant POLICE SERGEANTS "John Does 1-2" told Plaintiff that they did not have his property, or have any information regarding its whereabouts.

54.     Plaintiff asked one more of the Defendant POLICE OFFICERS "John Does 6-10" and/or Defendant POLICE OFFICER WILLIAMS, and/or the Defendant POLICE SERGEANTS "John Does 1-2" how to file a complaint against them, and against the Precinct.

55.     Plaintiff James Clavijo re-stated to Defendant POLICE OFFICERS WILLIAMS that he, Plaintiff, wanted to file a complaint against the Precinct.

56.     Defendant POLICE OFFICER WILLIAMS began pushing and shoving Plaintiff toward the Precinct's exit.

57.     Not one of the Defendant POLICE OFFICERS "John Does 1-5" nor the Defendant POLICE SERGEANTS "John Does 1-2" did anything to prevent Defendant POLICE OFFICER WILLIAMS from pushing and shoving Plaintiff.

58.     Plaintiff did not resist Defendant POLICE OFFICERS WILLIAMS' repeated shoves and continued moving toward the Precinct's exit.

59.     At or around this time, Defendant POLICE OFFICER WILLIAMS derisively stated to Plaintiff, in sum and substance, "Have a nice day."

60.     Plaintiff voiced his frustrations with Defendant POLICE OFFICER WILLIAMS', the Defendant POLICE OFFICERS' "John Does 6-10", and the Defendant POLICE SERGEANTS' "John Does 1-2" conduct, but continued walking toward the Precinct's exit.

61.     Before Plaintiff could exit the Precinct, three or more of the Defendant POLICE OFFICERS "John Does 6-10" and/or the Defendant POLICE SERGEANTS "John Does 1-2", tackled Plaintiff from behind, thereby pushing him through the Precinct's front door.

62.     Three or more of the Defendant POLICE OFFICERS "John Does 6-10" and/or the Defendant POLICE SERGEANTS "John Does 1-2" repeatedly struck and punched Plaintiff.

63.     Neither Defendant POLICE OFFICER WILLIAMS, nor any one of the Defendant POLICE OFFICERS "John Does 6-10", nor either one of the Defendant POLICE SERGEANTS "John Does 1-2" did anything to stop their co-officers from repeatedly striking and punching Plaintiff.

64.     Three or more of the Defendant POLICE OFFICERS "John Does 6-10" and/or the Defendant POLICE SERGEANTS "John Does 1-2" picked up Plaintiff and violently threw him down on the ground.

65.     Plaintiff suffered significant and painful injuries as a result of Defendant POLICE OFFICER WILLIAMS' shoving of Plaintiff, coupled with three or more of the Defendant POLICE OFFICERS' "John Does 6-10" and/or the Defendant POLICE SERGEANTS' "John Does 1-2" attack of Plaintiff.

9

66.     These injuries include severe pain resulting from the Defendant POLICE OFFICERS' act of punching and striking Plaintiff's face.

67.     These injuries include bruising and swelling below and around Plaintiff's right eye.

68.     Plaintiff was handcuffed and arrested.

69.     Plaintiff was detained in a holding cell within the Precinct until approximately 3:00pm that afternoon, when he was transferred to Central Booking.

70.     There Plaintiff was detained until approximately 11:00pm that evening, when he was arraigned and released on his own recognizance.

71.     Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE OFFICERS "John Does 1-10" and the Defendant POLICE SERGEANTS "John Does 1-2" caused Plaintiff to be held within their custody for a total of approximately fourteen (14) hours.

72.     Plaintiff never recovered his belongings.

73.     Plaintiff was charged with two counts of violating P.L. §240.20, disorderly conduct ("Docket #2012NY033581").

74.     Defendant POLICE OFFICER WILLIAMS falsely swore out the criminal complaint against Plaintiff.

75.     Plaintiff committed neither offense.

76.     Nonetheless, Plaintiff was forced to appear before the Court on or around May 30, 2012 to answer Defendant POLICE OFFICER WILLIAMS', and/or the Defendant POLICE OFFICERS "John Does 6-10", and/or the Defendant POLICE SERGEANTS' "John

Does 1-2" baseless charges stemming from their attack of Plaintiff within the Precinct, Docket #2012NY033581.

77.     Plaintiff was also forced to appear before the Court on or around July 11, 2012 in order to answer the Defendant POLICE OFFICERS' "John Does 1-5" baseless charges stemming from their unlawful arrest of Plaintiff outside of The Restaurant, Summons #433478434-3.

78.     All charges within Summons #433478434-3 were dismissed on the same day, July 11, 2012.

79.     Plaintiff was forced to appear before the Court on or around July 18, 2012 to answer Defendant POLICE OFFICER WILLIAMS', and/or the Defendant POLICE OFFICERS "John Does 6-10", and/or the Defendant POLICE SERGEANTS' "John Does 1-2" baseless charges stemming from their attack of Plaintiff within the precinct, Docket #2012NY033581.

80.     Plaintiff was forced to appear before the Court on or around September 12, 2012 to answer the same baseless charges, Docket #2012NY033581, when all charges were dismissed.

81.     Upon information and belief, each of the Defendant POLICE OFFICERS present for the arrests of Plaintiff knew at the time they arrested Plaintiff that they lacked probable cause to arrest Plaintiff for any crime.

82.     Upon information and belief, each of the Defendant POLICE OFFICERS present for the arrests of Plaintiff arrested Plaintiff, at least in part, to meet their prescribed quantitative productivity goals for arrests.

83.     Upon information and belief, the Defendant POLICE OFFICERS' arrests of Plaintiff were "contempt of cop" and/or "cover charge" arrests.

84.     Upon information and belief, "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration are relatively easy for police to levy in the absence of actual probable cause because they can be levied solely upon the allegations of the arresting officer(s) without reference to physical evidence or witness observation of criminal acts.

85.     Upon information and belief, to date, Defendant THE CITY OF NEW YORK has not implemented any curative training, oversight measures or policies designed or intended to curtail the improper use by New York City POLICE OFFICERS of so-called "contempt of cop" and "cover charge" charges such as disorderly conduct, resisting arrest, and obstruction of governmental administration.

86.     During all of the foregoing wrongful acts committed against Plaintiff, not one of the Defendant POLICE OFFICERS intervened on Plaintiff's behalf so as to prevent the violation of Plaintiff's constitutional rights, despite having realistic opportunities to do so.

87.     As a result of the foregoing, Plaintiff sustained, *inter alia*, physical pain, mental injuries, emotional distress, embarrassment, humiliation and deprivation of his constitutional rights.

88.     As a result of the foregoing, Plaintiff demands judgment against Defendants in an amount of money to be determined at trial.

## VII. GENERAL CONSTITUTIONAL CLAIM FOR RELIEF

### DEPRIVATION OF PLAINTIFF'S FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

_____

89.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

90.     All of the aforementioned acts of Defendant THE CITY OF NEW YORK, and the Defendant POLICE OFFICERS and their agents, servants and employees ("Defendants"), were carried out under the color of state law.

91.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a. Not to be deprived of liberty without due process of law;

    b. To be free from seizure and arrest not based upon probable cause;

    c. To freedom from being subjected to false criminal charges by the police;

    d. To freedom from excessive force;

    e. To freedom from retaliatory prosecution;

    f. To freedom from abuse of process; and

    g. To freedom of speech and expression.

92.     All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

93.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, under color of law, with all of the actual and/or apparent authority attendant thereto.

94.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

95.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, out-of-pocket expenses and damage to his reputation and standing within his community.

96.     Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

97.     Defendants deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

98.     Defendant THE CITY OF NEW YORK and the NYPD are responsible for the actions of their employees under the doctrine of *Monell v. City of New York Department of Social Services*, 436 U.S. 658 (1978), and under the doctrine of *respondeat superior*.

99.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer damages, injuries, and harm.

100.    As a result, Plaintiff seeks compensation in an amount to be determined at trial.

### VIII. CLAIMS FOR RELIEF RELATED TO DEFENDANTS' ISSUANCE OF SUMMONS #433478434-3

_____

### CLAIM FOR RELIEF VIII. - A

### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### UNDER 42 U.S.C. §1983
### ARISING FROM WARRANTLESS ARREST WITHOUT PROBABLE CAUSE

101.    One or more of the Defendant POLICE OFFICERS "John Doe 1-5"

handcuffed Plaintiff without a warrant for his arrest.

102.    One or more of the Defendant POLICE OFFICERS "John Doe 1-5"

handcuffed Plaintiff without probable cause for his arrest.

103.    The Defendant POLICE OFFICERS "John Does 1-5" arrested Plaintiff

without having exigent circumstances for doing so.

104.    As a result, Plaintiff was damaged, harmed and injured, and seeks

compensation in an amount to be determined at trial.

### CLAIM FOR RELIEF VIII. - B

### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### UNDER 42 U.S.C. §1983
### ARISING FROM DEFENDANTS' MALICIOUS PROSECUTION OF PLAINTIFF

105.    The Defendant POLICE OFFICERS "John Does 1-5"  caused criminal

process to be brought against Plaintiff.

106.    These prosecutions ended in Plaintiff's favor.

107.    There was no probable cause to initiate these prosecutions.

108.    The Defendant POLICE OFFICERS "John Does 1-5" acted maliciously in

initiating these proceedings.

109.    Plaintiff was forced to appear before the court on approximately two (2) occasions to answer the criminal proceedings that the Defendant POLICE OFFICERS "John Does 1-5" maliciously initiated against him.

110.    Plaintiff was repeatedly deprived of his liberty as a result.

111.    As a result, Plaintiff seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF VIII. - C

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM DEFENDANTS' USE OF EXCESSIVE FORCE

112.    The Defendant POLICE OFFICERS "John Does 1-5" placed Plaintiff in handcuffs, despite not having probable cause for his arrest.

113.    The handcuffs were too tight, and were left on for unreasonable periods of time.

114.    At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the Defendant POLICE OFFICERS "John Does 1-5" against Plaintiff.

115.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF VIII. - D

VIOLATION OF PLAINTIFFS' FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM DEFENDANTS' FABRICATION OF EVIDENCE AND PERJURY

116.    The Defendant POLICE OFFICERS "John Does 1-5" made false statements, including false sworn criminal summonses and complaints, alleging that Plaintiff committed illegal acts.

117.    At no point did Plaintiff commit any violation or crime.

118.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF VIII. - E

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM DEFENDANTS' FAILURE TO INTERVENE

119.    The individual Defendant POLICE OFFICERS "John Does 1-5" had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by the other Defendant "John Does 1-5" POLICE OFFICERS.

120.    The individual Defendant POLICE OFFICERS "John Does 1-5" failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

121.    The individual Defendant POLICE OFFICERS "John Does 1-5" failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

122.    As a result of the aforementioned conduct of the Defendant POLICE OFFICERS "John Does 1-5", Plaintiff's constitutional rights were violated.

123.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF VIII. - F

<u>EQUAL PROTECTION  UNDER 42 U.S.C. §1983</u>

124.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

125.    That at all times described herein, Plaintiff was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

126.    The Defendant POLICE OFFICERS "John Does 1-5" subjected Plaintiff battery, use of excessive force, unlawful arrests, and other violations of Plaintiff's constitutional rights in the manner described herein because they knew that they could do so with impunity, notwithstanding their knowledge that said conduct would jeopardize Plaintiff's wellbeing, safety, and constitutional rights.

127.    The acts complained of were carried out by the Defendant POLICE OFFICERS "John Does 1-5" in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

128.    The acts complained of were carried out by the Defendant POLICE OFFICERS "John Does 1-5" in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

129.    The Defendant POLICE OFFICERS' "John Does 1-5" particular acts of subjecting Plaintiff to battery, use of excessive force, unlawful arrests, and other violations of Plaintiff's constitutional rights in the manner described herein, were the result of a perceived

ease of charging and prosecuting minority individuals with crimes and/or violations in order to cover up for constitutionally-violative conduct.

130.    The Defendant POLICE OFFICERS "John Does 1-5" undertook the particular actions described herein against Plaintiff because Plaintiff is Latino, and therefore the Defendant POLICE OFFICERS "John Does 1-5" knew that they could undertake these actions with impunity.

131.    As a result of the aforementioned conduct, the Defendant POLICE OFFICERS "John Does 1-5" violated Plaintiff's constitutional rights to equal protection, and thus Plaintiff is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

132.    As a result of the above constitutionally-impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

133.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>CLAIM FOR RELIEF VIII.  - G</u>

<u>MUNICIPAL LIABILITY UNDER *MONELL*</u>
<u>UNDER 42 U.S.C. §1983</u>
<u>ARISING FROM UNCONSTITUTIONAL MUNICIPAL POLICIES RELATING TO ARRESTS QUOTAS</u>

134.    Defendant THE CITY OF NEW YORK and the NYPD established official policies directing and promoting unconstitutional practices by NYPD officers, and have tolerated, condoned and permitted widespread unconstitutional practices by NYPD officers.

135.    Defendant THE CITY OF NEW YORK indemnifies and shields NYPD officers who repeatedly and habitually violate constitutional rights, such as the Defendant POLICE OFFICERS "John Does 1-5".

136.    Defendant THE CITY OF NEW YORK fails to discipline police misconduct, thereby insuring that such misconduct continues.

137.    Defendant THE CITY OF NEW YORK implements quotas for individual officers' arrests, thus incentivizing or compelling unconstitutional misconduct by individual officers.

138.    Defendant THE CITY OF NEW YORK tolerates and condones police perjury.

139.    Defendant THE CITY OF NEW YORK tolerates and condones the unlawful practice of cover charge arrests for contempt of cop.

140.    These policies and practices caused the unlawful conduct of the Defendant POLICE OFFICERS "John Does 1-5".

THE NYPD COMPELS ITS OFFICERS TO MEET
UNLAWFUL ARREST QUOTAS,
COMPELLING THOUSANDS OF BASELESS AND UNLAWFUL ARRESTS

141.    The NYPD places emphasis on numbers-driven street-level enforcement of minor violations.[1]

---

[1]    Defendants' [City of New York et al.] Local Civil Rule 56.1 Statement of Undisputed Facts, 08 CIV.  01034 (SAS) [SDNY], docket number 144, filed 2/24/2011, paragraphs 116-131.

142.     Indeed, the use of an explicit quota system has been documented at the several precincts.[2]

143.     This quota system is enforced by the very top levels of the NYPD through the Department's Compstat system.

144.     In a full-page ad on page 15 of the May 7, 2012 edition of the New York Daily News, The Patrolmen's Benevolent Association made clear that the quota pressure comes from the top.   Referring to these quotas, the ad is headlined: "Don't Blame the Cop, Blame NYPD Management."

145.     The NYPD uses Compstat to track such enforcement actions statistically.

146.     The NYPD holds weekly crime strategy meetings, "Compstat Meetings," at which such reports are discussed.[3]

147.     Compstat Meetings are attended by all commanders of Precincts, Police Service Areas, Transit Districts and other operational unit commanders within a given Patrol Borough, including the commanding officers and /or supervisors of precinct-based and specialized investigative units.[4]

148.     Also in attendance are representatives from the District Attorneys' Offices as well as Transit and Housing Bureau Commanders whose jurisdictions lie within the patrol borough, Crime Strategy Coordinators from other patrol boroughs, and ranking officers from

_____

[2]     Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.
[3]     Id.
[4]     Id.

a variety of support and ancillary units (such as the Legal Bureau which do not perform direct enforcement functions.).[5]

149.    The purpose of these Compstat Meetings is for the commanders to direct and modify street-level law enforcement policy based on Compstat statistics.[6]

150.    At these weekly Compstat Meetings, commanders either ratify that the statistics show that the NYPD's street-level activities are correctly implementing the NYPD's stated policies, or street-level deployments are modified to bring these activities in line with such policies.[7]

151.    In this way, the highest-level command of the NYPD exercises granular control over summonses and arrests for minor violations and quality of life offenses, as well as for stop, question and frisk activity.[8]

152.    What street-level police officers do is a direct result of these command-level policies.

153.    As the New York Daily News reported, NYPD supervisors give explicit instructions to street-level enforcement personnel that quantity, not quality, matters – promulgating a policy that comes from the very top of the NYPD hierarchy. [9]

---

[5]    Id.
[6]    Id.
[7]    Id.
[8]    Id.
[9]    Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt.  Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011.

154.     Individual officers have stepped forward to denounce the NYPD's use of

quotas, which are illegal.[10]

155.     Officers that refuse to meet illegal quotas are subject to adverse employment

actions and other retribution from their superiors.[11]

156.     The NYPD officially denies that it maintains and enforces quotas.

157.     However, the existence of this unconstitutional arrest quota custom and/or

policy has been shown by the posting of lists of quantitative targets for various forms of

summonses at the 77th Precinct in Brooklyn.[12]

158.     The existence of the aforesaid unconstitutional arrest quota custom and/or

policy may further be inferred from the tape recordings acquired by WABC-TV/DT, in

which a 41st Precinct sergeant explains that each of his officers is held to a twenty summons

per month, and one arrest per month, enforcement quota.[13]

---

[10]     Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt.  Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011; Parascandola , Rocco, "An ex-Bronx cop Ex-Cop Sues City, Says Quotas Led to Firing: Ex-Bronx cop Vanessa Hicks suing city, says quotas led to axing,"
The New York Daily News, May 2, 2011; Parascandola, Rocco, "79th Precinct cops claim retribution: Nine officers say poor evaluations are payback from commander," The New York Daily News, April 10, 2012.
[11]     See id.
[12]     Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.
[13]     Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010.  Article incorporated by reference herein and available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

159.    The existence of the aforesaid unconstitutional arrest quota custom and policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st Precinct sergeant telling his officers to make quota-driven arrests as directed by their superiors even if they must void the arrests at the end of their shifts.[14]

### THESE UNCONSTITUTIONAL POLICES AND PRACTICES RESULTED IN PLAINTIFF'S INJURY

160.    Upon information and belief, The Defendant POLICE OFFICERS "John Does 1-5" were implementing the foregoing unlawful "productivity goals" or arrests quotas custom, practice, and/or policy when they arrested and detained Plaintiff.

161.    Upon information and belief, the NYPD's practice of tolerating and condoning widespread perjury by its officers, including but not limited to the Defendant POLICE OFFICERS "John Does 1-5" directly and proximately resulted in Plaintiff being subjected to unlawful arrests and excessive force by the Defendant POLICE OFFICERS "John Does 1-5".

162.    Upon information and belief, the NYPD's practice of tolerating and condoning police misconduct by its officers, including but not limited to the Defendant POLICE OFFICERS "John Does 1-5", directly and proximately resulted in Plaintiff being

---

[14]    Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town."  Village Voice, May 11, 2010.  Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

subjected to unlawful arrests and excessive force by the Defendant POLICE OFFICERS "John Doe 1-5".

163.    Upon information and belief, the NYPD's practice of unlawfully making arrest in order to meet illegal "arrest quotas" directly and proximately resulted in Plaintiff being subjected to unlawful arrests and excessive force by the Defendant POLICE OFFICERS "John Doe 1-5".

164.    As a result of the above constitutionally impermissible conduct, Plaintiff suffered violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and physical injury.

165.    Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## IX. CLAIMS FOR RELIEF RELATED TO DEFENDANTS'

## UNLAWFUL ARREST OF PLAINTIFF

## RELATED TO DOCKET NO. 2012NY033581

_____

### CLAIM FOR RELIEF IX. - A

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM WARRANTLESS ARREST WITHOUT PROBABLE CAUSE

166.    Defendant POLICE OFFICER WILLIAMS, and/or one or more of the Defendant "John Does 1-2" POLICE SERGEANTS, and/or each of the individual Defendant "John Does 6-10" POLICE OFFICERS handcuffed Plaintiff without a warrant for his arrest.

167.   Defendant POLICE OFFICER WILLIAMS, and/or one or more of the Defendant "John Does 1-2" POLICE SERGEANTS, and/or each of the individual Defendant "John Does 6-10" POLICE OFFICERS handcuffed Plaintiff without probable cause for his arrest.

168.   Defendant POLICE OFFICER WILLIAMS, and/or one or more of the Defendant "John Does 1-2" POLICE SERGEANTS, and/or each of the individual Defendant "John Does 6-10" POLICE OFFICERS handcuffed Plaintiff without exigent circumstances for his arrest.

169.   As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF IX. - B

VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM DEFENDANTS' USE OF EXCESSIVE FORCE

170.   Defendant POLICE OFFICER WILLIAMS, and/or one or more of the Defendant POLICE SERGEANTS "John Does 1-2", and/or each of the individual Defendant POLICE OFFICERS "John Does 6-10" placed Plaintiff in handcuffs, despite not having probable cause for his arrest.

171.   The handcuffs were too tight, and were left on for unreasonable periods of time.

172.   Either or both of the Defendant POLICE SERGEANTS "John Does 1-2", and/or each of the individual Defendant POLICE OFFICERS "John Does 6-10" tackled Plaintiff from behind as he was exiting the 20th Precinct.

26

173.    Either or both of the Defendant POLICE SERGEANTS "John Does 1-2", and/or each of the individual Defendant POLICE OFFICERS "John Does 6-10" repeatedly struck and punched Plaintiff.

174.    Either or both of the Defendant POLICE SERGEANTS "John Does 1-2", and/or one or more of the Defendant POLICE SERGEANTS "John Does 1-2", and/or each of the individual Defendant POLICE OFFICERS "John Does 6-10" picked up Plaintiff and violently threw him down on the ground.

175.    At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by Defendant POLICE OFFICER WILLIAMS, and/or one or more of the Defendant POLICE SERGEANTS "John Does 1-2", and/or each of the individual Defendant POLICE OFFICERS "John Does 6-10" against Plaintiff.

176.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

<u>CLAIM FOR RELIEF IX. - C</u>

<u>VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS
UNDER 42 U.S.C. §1983
ARISING FROM DEFENDANTS' FAILURE TO INTERVENE</u>

177.    Defendant POLICE OFFICER WILLIAMS, each of the Defendant POLICE SERGEANTS "John Does 1-2", and each of the individual Defendant POLICE OFFICERS "John Does 6-10" had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by the other Defendant POLICE OFFICERS.

178.    Defendant POLICE OFFICER WILLIAMS, each of the Defendant POLICE SERGEANTS "John Does 1-2", and each of the individual Defendant POLICE OFFICERS

27

"John Does 6-10" failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so.

179.    Defendant POLICE OFFICER WILLIAMS, each of the Defendant POLICE SERGEANTS "John Does 1-2", and each of the individual Defendant POLICE OFFICERS "John Does 6-10" failed to intervene on Plaintiff's behalf despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

180.    As a result of the aforementioned conduct of Defendant POLICE OFFICER WILLIAMS, each of the Defendant POLICE SERGEANTS "John Does 1-2", and each of the individual Defendant POLICE OFFICERS "John Does 6-10", Plaintiff's constitutional rights were violated.

181.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

<u>CLAIM FOR RELIEF IX. - D</u>

<u>FAILURE TO TRAIN SUBORDINATES AGAINST</u>
<u>THE DEFENDANT POLICE DEPARTMENT SERGEANTS</u>

182.    The Defendant POLICE SERGEANTS "John Does 1-2" were those officers, whose names are presently unknown, who by virtue of their position or assignment had authority to supervise Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10".

183.    The Defendant POLICE SERGEANTS "John Does 1-2" were imbued with direct supervision and control over Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10".

184.    The Defendant POLICE SERGEANTS "John Does 1-2" were imbued with authority to train and discipline Defendant POLICE OFFICERS WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10".

185.    The Defendant POLICE SERGEANTS "John Does 1-2" knew or should have known that Defendant POLICE OFFICER WILLIAMS and each of the Defendant POLICE OFFICERS "John Does 6-10" had a propensity to violate the constitutional rights of people with whom Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" came into contact.

186.    The Defendant POLICE SERGEANTS "John Does 1-2" knew or should have known that Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" needed training in how to refrain from further such misconduct.

187.    The Defendant POLICE SERGEANTS "John Does 1-2" were deliberately indifferent to Defendant POLICE OFFICER WILLIAMS' and the Defendant POLICE OFFICERS' "John Does' 6-10" need for such training.

188.    As a result of the aforementioned failure to train, Plaintiff's constitutional rights were violated.

189.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

<u>EIGHTH CLAIM FOR RELIEF IX. - E</u>

<u>FAILURE TO SUPERVISE SUBORDINATES AGAINST
THE DEFENDANT POLICE DEPARTMENT SERGEANTS</u>

190.    The Defendant POLICE SERGEANTS "John Does 1-2" were those officers, whose names are presently unknown, who by virtue of their position or assignment had authority to supervise Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10".

191.    The Defendant POLICE SERGEANTS "John Does 1-2" were imbued with direct supervision and control over Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" in the performance of their duties.

192.    Defendant POLICE OFFICERS WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" reported to the Defendant POLICE SERGEANTS "John Does 1-2".

193.    The Defendant POLICE SERGEANTS "John Does 1-2" knew or should have known that Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" had propensities of violating the constitutional rights of people with whom these officers came into contact.

194.    The Defendant POLICE SERGEANTS "John Does 1-2" knew or should have known that Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" needed supervision to prevent them from committing further such misconduct.

195.    The Defendant POLICE SERGEANTS "John Does 1-2" failed to effectively discipline Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" for their misconduct.

196.    The Defendant POLICE SERGEANTS "John Does 1-2" failed to correct Defendant POLICE OFFICER WILLIAMS and the Defendant POLICE OFFICERS "John Does 6-10" for their unconstitutional policing practices.

197.    As a result of the aforementioned failure to supervise, Plaintiff's constitutional rights were violated.

198.    As a result, Plaintiff was damaged, harmed and injured, and seeks compensation in an amount to be determined at trial.

CLAIM FOR RELIEF IX. - F

RETALIATION FOR FIRST AMENDMENT
PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983

199.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

200.    Plaintiff engaged in protected speech and conduct when he asked Defendant POLICE OFFICER WILLIAMS, and/or Defendant POLICE SERGEANTS "1-2", and/or the Defendant POLICE OFFICERS "John Does 6-10" for information regarding how to file a complaint against them, and against the 20th Precinct.

201.    Plaintiff engaged in protected speech and conduct when he sought to file a complaint against the Precinct.

202.    Plaintiff engaged in protected speech and conduct when he voiced his frustrations with how Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" were treating him.

203.    Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" took adverse action against Plaintiff in response to Plaintiff engaging in protected speech and conduct.

204.    Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" took adverse actions against Plaintiff by using wrongful and unjustified force upon him.

205.    Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" took adverse action against Plaintiff by unlawfully arresting him.

206.    Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" took adverse action against Plaintiff by falsely accusing him of crimes and violations.

207.    Defendant POLICE OFFICER WILLIAMS, Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10"  took adverse action against Plaintiff by detaining him against his will.

208.    Upon information and belief, there was a causal connection between the protected speech and conduct engaged in by Plaintiff and the adverse actions taken by Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10".

209.    The causal connection between the protected speech and conduct engaged in by Plaintiff and the adverse actions taken against him by Defendant POLICE OFFICER WILLIAMS, Defendant POLICE SERGEANTS "1-2", and the Defendant "John Does 6-10" POLICE OFFICERS was demonstrated by, among other things, the fact that Defendant

32

POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" used excessive force against Plaintiff in the absence of justification.

210.   The above-described charges were a pretext intended to justify Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" illegal arrests of and use of excessive force against Plaintiff.

211.   As a result of Defendant POLICE OFFICER WILLIAMS', the Defendant POLICE SERGEANTS' "1-2", and the Defendant POLICE OFFICERS' "John Does 6-10" constitutionally-violative conduct, Plaintiff suffered violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and physical injury.

212.   As a result, Plaintiff demands judgment against Defendants in an amount of money to be determined at trial.

CLAIM FOR RELIEF IX. - G

EQUAL PROTECTION UNDER 42 U.S.C. §1983

213.   Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

214.   That at all times described herein, Plaintiff was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

215.   Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS  "John Does 6-10" subjected

Plaintiff to assault, battery, use of excessive force, unlawful arrests, and other violations of Plaintiff's constitutional rights in the manner described herein because they knew that they could do so with impunity, notwithstanding their knowledge that said conduct would jeopardize Plaintiff's , wellbeing, safety, and constitutional rights.

216.    The acts complained of were carried out by Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

217.    The acts complained of were carried out by Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

218.    Defendant POLICE OFFICER WILLIAMS', the Defendant POLICE SERGEANTS' "1-2", and the Defendant POLICE OFFICERS' "John Does 6-10" particular acts of subjecting Plaintiff to assault, battery, use of excessive force, unlawful arrests, and other violations of Plaintiff's constitutional rights in the manner described herein, were the result of a perceived ease of charging and prosecuting minority individuals with crimes and/or violations in order to cover up for constitutionally-violative conduct.

219.    Defendant POLICE OFFICER WILLIAMS', the Defendant POLICE SERGEANTS' "1-2", and the Defendant POLICE OFFICERS' "John Does 6-10" undertook the particular actions described herein against Plaintiff because Plaintiff is Latino, and therefore Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS

34

"1-2", and the Defendant POLICE OFFICERS "John Does 6-10" knew that they could undertake these actions with impunity.

220.    As a result of the aforementioned conduct, Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" violated Plaintiff's constitutional rights to equal protection, and thus Plaintiff is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

221.    As a result of the above constitutionally-impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

222.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>CLAIM FOR RELIEF IX.  - H</u>

<u>MUNICIPAL LIABILITY UNDER *MONELL*</u>
<u>UNDER 42 U.S.C. §1983</u>
<u>ARISING FROM UNCONSTITUTIONAL MUNICIPAL POLICIES RELATING TO
THE NYPD'S CUSTOM, PRACTICE, AND POLICY OF UNLAWFULLY
CHARGING INNOCENT PEOPLE WITH "COVER" CHARGES TO PUNISH
"CONTEMPT OF COP"</u>

223.    Upon information and belief, police officers in the City of New York make arrests in the absence of the commission of any crime by the person arrested, motivated by a desire to punish the arrestee for the arrestee's perceived failure to display the degree of deference or subservience demanded by the arresting officers.

224.    Such arrests are frequently referred to as "**contempt of cop**" arrests.

225.    In order to conceal the illegality of these arrests, the victim of the unlawful arrest is charged with a "**cover charge**," usually a low-level crime which does not require a complainant, and whose elements can be established, for the purposes of a criminal complaint, by the officer's own perjured affidavit or testimony.

226.    NYPD police officers have a pattern and practice of charging one or more of a trinity of offenses as their favored cover charges: disorderly conduct, resisting arrest, and obstruction of governmental administration.

227.    However, other charges that require no complainant, such as quality of life infractions like open container or excessive noise violations, are also used to cover false arrests.

228.    The New York Times published a special report on the incidence of police brutality as a response to perceived "contempt of cop" by residents of the City of New York, and documented officers' use of cover charges in such cases.[15]

229.    The NYPD has never undertaken any internal study of contempt of cop arrests or cover charges, and statistics on these practices are not available.  However, there is extensive evidence of a widespread practice of false cover charges.

230.    In a case profiled by the CCRB, that board substantiated a quintessential contempt-of-cop/cover charge false arrest: "The board also determined that the second

---

[15]    Sontag, Deborah, and Barry, Dan, "CHALLENGE TO AUTHORITY: A special report: Disrespect as Catalyst for Brutality," New York Times, November 19, 1997.  Article incorporated by reference herein and available online at http://www.nytimes.com/1997/11/19/nyregion/challenge-to-authority-a-special-report-disrespect-as-catalyst-for-brutality.html?pagewanted=all.

officer improperly drew his gun, failed to provide his name as required by the department's Patrol Guide, and lacked probable cause to issue the disorderly conduct summons, a summons motivated by the man's challenging the officers' actions."[16]

231.    In another such case, the CCRB found that a detective struck a man in the back of the head with a gun when the man questioned the detective.  The man was charged with disorderly conduct, which charges were dismissed.[17]

232.    In another such case, the CCRB found that without legal justification an officer arrested a man who accidentally bumped into him on the street.  The CCRB found that the officer issued the man a summons charging him with disorderly conduct, and the officer told him, "You're lucky I didn't beat the shit out of you." A court dismissed the disorderly conduct summons.[18]

233.    Defendant City of New York and the New York Police Department continue to resist calls for disclosure statistics concerning minor crimes such as the typical "cover charge" crimes.[19]

234.    The NYPD's failure to respond to this well documented problem, and its obstruction of efforts of outside parties to document and address this issue, amount to

---

[16]    CCRB Case Profiles, available at http://www.nyc.gov/html/ccrb/html/profiles.html (last visited May 15, 2012).

[17]    Id.

[18]    Id.

[19] Rivera, Ray and Baker, Al, "Data Elusive on Low-Level Crime in New York City," The New York Times, Nov. 1, 2010.  Article incorporated by reference herein and available online at http://www.nytimes.com/2010/11/02/nyregion/02secrecy.html?pagewanted=all.

ratification of the pattern and practice of contempt of cop arrests and excessive force, justified by false cover charges, by the NYPD's agents, employees, and officers.

<u>THESE UNCONSTITUTIONAL POLICES AND PRACTICES RESULTED IN<br>PLAINTIFF'S INJURY</u>

235.    Upon information and belief, Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10" were acting pursuant to the custom, practice, and/or policy of subjecting individuals to "contempt of cop" arrests or arrests quotas custom, practice, and/or policy each time they arrested and detained Plaintiff.

236.    Upon information and belief, the NYPD's practice of tolerating and condoning police misconduct by its officers, including but not limited to Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10", directly and proximately resulted in Plaintiff being subjected to unlawful arrests and excessive force by Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10".

237.    Upon information and belief, the NYPD's practice of unlawfully charging innocent people with 'cover' charges to punish "contempt of cop" directly and proximately resulted in Plaintiff being subjected to unlawful arrests and excessive force by Defendant POLICE OFFICER WILLIAMS, Defendant POLICE SERGEANTS "1-2", and the Defendant POLICE OFFICERS "John Does 6-10".

238.    As a result of the above constitutionally impermissible conduct, Plaintiff suffered violations of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and physical injury.

239.    Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

CLAIM FOR RELIEF X

PUNITIVE DAMAGES AGAINST THE DEFENDANT POLICE OFFICERS

240.    The actions of Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "John Does 1-2", and the Defendant POLICE OFFICERS "John Does 1-10" constituted intentional violations of federal and state law.

241.    The actions of Defendant POLICE OFFICER WILLIAMS, the Defendant POLICE SERGEANTS "John Does 1-2", and the Defendant POLICE OFFICERS "John Does 1-10" were motivated by evil motive or intent, or involved involves reckless or callous indifference to the constitutionally protected rights of Plaintiff.

242.    As a result, Plaintiff is entitled to an award of punitive damages against Defendant POLICE OFFICER WILLIAMS, each of the Defendant POLICE SERGEANTS "John Does 1-2", and each of the Defendant POLICE OFFICERS "John Does 1-10" in an amount to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
          August 30, 2013

Respectfully submitted,

DAVID A. THOMPSON [DT 3991]
STECKLOW COHEN & THOMPSON
10 SPRING STREET – SUITE 1
New York, New York 10012
[212] 566-8000
[212] 202-4952/FAX
DTHOMPSON@WYLIELAW.COM
ATTORNEY FOR PLAINTIFF